UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| VIOLET FAYE AVILA, | ) No. CV 11-07670-VBK |
| | ) |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR"). After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

//

**PROCEEDINGS**

Plaintiff Violet Faye Avila (hereinafter "Plaintiff"), represented by counsel, filed this action pursuant to 42 U.S.C. §405(g), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II and Title XVI disability benefits.

Plaintiff filed her Complaint on September 22, 2011. The Commissioner filed his Answer and the Certified Administrative Record ("AR") on March 23, 2012. On June, 25, 2012, the parties filed a Joint Stipulation.

The matter is now pending before the Court and ready for decision. This Memorandum Opinion and Order shall constitute the Court's findings of fact and conclusions of law.

**I**

**BACKGROUND**

On March 24, 2008, Plaintiff filed her application for Title II and Title XVI disability benefits due to carpal tunnel syndrome, a shoulder injury, and a knee replacement. (AR 125-34, 156.) Plaintiff alleged an onset date of May 17, 2003. (AR 157.) The application was denied administratively. (AR 80-84.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (AR 85.)

The hearing before the ALJ commenced on October 13, 2009, at which time Plaintiff appeared and testified. (AR 8-62.) Testimony was also taken from a vocational expert ("VE"), as well as Plaintiff's daughter, Marie Torres ("Torres"). (AR 48-62.)

On January 13, 2010, the ALJ issued an unfavorable decision (AR 65-76.), and Plaintiff appealed. (AR 6, 206-09.) The Appeals Council

denied review, thus making the ALJ's decision the final decision of the Commissioner.[1] Plaintiff then filed this action seeking judicial review.

In the Joint Stipulation, Plaintiff raises the following issues:

1. The ALJ's residual functional capacity assessment is not supported by substantial evidence;
2. The ALJ improperly discredited Plaintiff's credibility;
3. The ALJ did not properly consider lay testimony from the Plaintiff's daughter, Marie Torres.

## II

## DISCUSSION

The Court, pursuant to 42 U.S.C. §405(g), has the authority to review the Commissioner's decision denying Plaintiff's disability benefits to determine whether her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999); <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998).

A claimant is "disabled" for the purpose of receiving benefits under the Social Security Act if the claimant is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A); 20 CFR §§404.1505(a), 416.905(a). "The claimant bears the burden of

---

[1] The parties both agree in their Joint Stipulation that the Appeals Council denied review of the ALJ's decision (JS 2); however, this denial is not included in the Administrative Record.

establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. §§404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§404.1520(b), 416.920(b). If the claimant is not currently engaged in substantial gainful activity, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting the claimant from performing basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§404.1520(c), (416.920(c). In the **Third Step**, if the claimant has a severe impairment, the ALJ must compare the impairment to those impairments in the Listing of Impairments ("Listing"), 20 C.F.R. §404, Subpart P, App. 1. If the impairment meets or equals an impairment in the Listing, disability is conclusively presumed and benefits are awarded. 20 C.F.R. §404.1520(d), 416.920(d). When the claimant's impairment does not meet or equal an impairment in the Listing, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform the claimant's past work; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§404.1520(e), 416.920(e). When the claimant shows an inability to perform past relevant work, a prima facie case of disability is established and, in **Step Five**, the

burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§404.1520(f), 416.920(f).

Following this sequential evaluation process, at Step One, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since her alleged disability onset date of May 17, 2003. (AR 71, Finding 2.) At Step Two, the ALJ found that Plaintiff has an impairment or combination of impairments considered severe, determined in the decision to be musculoskeletal impairments, obesity, diabetes mellitus, and hypertension. (AR 71, Finding 3.) At Step Three, it was found that these severe impairments do not meet or medically equal one of the Listings. (AR 71, Finding 4.) The ALJ noted that though there are no Listing criteria specific to the evaluation of obesity impairments, considerations regarding Plaintiff's obesity impairments have been taken into account in reaching the conclusions in Steps Two through Five. (AR 71, Finding 4.) After determining Plaintiff's residual functional capacity ("RFC") (AR 23, Finding 7), the ALJ determined at Step Four that Plaintiff has the residual functional capacity to perform work requiring lifting/carrying of up to twenty pounds occasionally and ten pounds frequently; alternate sitting and standing/walking in one-hour intervals; and that she would be precluded from performing work requiring overhead reaching. (AR 72-75, Finding 5.) At Step Five, the ALJ found that Plaintiff was capable of performing her past relevant work as an office assistant/seasonal clerk (AR 75, Finding 6), thus rendering Plaintiff not disabled as defined in the Social Security Act ("Act"). (AR 76, Finding 7.)

## III

## **THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT**

## **IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff's principal contention is that the ALJ failed to properly consider two bilateral knee x-rays taken in 2008 and 2009 in determining her RFC. (See AR 370, 366.) The bilateral knee x-rays taken on July 1, 2008 revealed "marked narrowing of both lateral joint compartments, more pronounced on the left side." (AR 370.) The bilateral knee x-rays taken on May 12, 2009, revealed "severe osteoarthritis with chondrocalcinosis." (AR 366.) In particular, Plaintiff points to the fact that the ALJ relied upon the non-examining assessment of the State Agency medical consultant, Dr. Beig, who did not take into consideration the 2008 and 2009 knee x-rays when evaluating Plaintiff's exertional capabilities. (AR 75, 358.)

Plaintiff additionally contends that the ALJ's RFC is not supported by substantial evidence because he failed to properly consider Plaintiff's obesity in the RFC assessment, in particular the effect of "severe" osteoarthritis revealed in the 2008 and 2009 bilateral knee x-rays.

**A.  Analysis**.

Though Plaintiff is correct in her factual assertion that the ALJ did not consider the 2008 and 2009 knee x-rays in determining her RFC, his failure to evaluate the x-rays had neither a probative or significant effect on his exertional findings.

In addition to Dr. Beig's evaluation, the ALJ considered an exertional examination conducted by Dr. Ram, dated May 8, 2008. (AR 74-75, 351-56.) Dr. Ram found that:

6

> "There is evidence of osteoarthritis on the knees. No scars. There is a valgus deformity but no muscle atrophy, swelling or warmth. There is pain in both knees due to the osteoarthritis. The range of motion is restricted with pain reported."

(AR 354.)

Thus, contrary to Petitioner's contentions, the ALJ clearly did take into account Plaintiff's bilateral knee osteoarthritis.

Plaintiff contends, however, that whereas the 2008 and 2009 x-rays reveal "marked" and "severe" osteoarthritis of the knees (AR 366, 370), Dr. Ram only noted "evidence" of osteoarthritis in his physical evaluation. (AR 354.) This disparity in terminology is ultimately immaterial. Most notably, the x-rays address neither Plaintiff's RFC or Plaintiff's exertional capacity to perform her work-related tasks. As held by the Ninth Circuit, the ALJ is not required to discuss every piece of evidence, as long as the disregarded evidence is neither "probative" or "significant." Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)(quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)); Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Plaintiff compares the ALJ's disregard of her knee x-rays as akin to "disregard[ing] an MRI of the brain showing lesions and demyelinating disease" (JS 9); however, this comparison is unpersuasive, because here, Plaintiff's bilateral knee osteoarthritis was already taken into account by the ALJ in his consideration of Dr. Ram's medical evaluation. (See AR 74.) The only additional information regarding Plaintiff's bilateral knee osteoarthritis present in the x-rays that is not present in Dr. Ram's evaluation are

7

the modifying words "severe" and "marked" used to describe the degree of bilateral knee osteoarthritis. Though Plaintiff contends that this is sufficient to demonstrate that the ALJ's RFC is not supported by substantial evidence, the 2008 and 2009 x-ray reports fail to give any additional indication of the effect of these findings on Plaintiff's exertional limitations. Thus, the ALJ's failure to consider the 2008 and 2009 bilateral knee x-rays did not have a "significant" or "probative" effect on the conclusions made as to the RFC.

Furthermore, in addition to finding that Plaintiff had evidence of osteoarthritis in her knees, Dr. Ram also found that Plaintiff had full range of motion in her shoulders, elbows, wrists, hands, hips, ankles, and feet with no pain reported in these areas. (AR 353-54.) Dr. Ram concluded:

> "[C]laimant is able to occasionally lift and carry 20 pounds and frequently lift and carry 20 pounds over the course of an eight hour day. She is able [sic] stand and walk at least four hours over the course of an eight-hour day with normal breaks. She is able to sit for at least four hours over the course of an eight-hour day with normal breaks. She is able to push and pull frequently with the upper extremities. She is able to push and pull occasionally with the lower extremities."

(AR 355.)

These exertional findings by Dr. Ram are in line with the ALJ's RFC findings at Step Four. In fact, the ALJ found that Plaintiff was limited to "lifting/carrying of up to 20 pounds occasionally and 10

8

pounds frequently," a more restrictive exertional limitation than was indicated by Dr. Ram. (AR 72.)

Plaintiff additionally contends that the ALJ's RFC is not supported by substantial evidence because he did not properly consider the impact of Plaintiff's obesity on her RFC; however, the ALJ clearly stated that "these [obesity] considerations have been taken into account in reaching the conclusions herein at the 2nd through 5th steps of the sequential disability evaluation process." (AR 72.) Nevertheless, Plaintiff argues that because the ALJ did not consider the "marked" and "severe" osteoarthritis of Plaintiff's knees, as indicated in the 2008 and 2009 x-rays, the ALJ did not properly consider Plaintiff's obesity at Step Four.

As discussed previously, the ALJ's disregard of the 2008 and 2009 x-rays did not have a "significant" or "probative" effect on the ALJ's RFC, because Plaintiff's osteoarthritis was already taken into account. See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Thus, because the ALJ took into account Plaintiff's knee injuries, as reported by Dr. Ram, he properly considered the impact of Plaintiff's obesity as it might have impacted her exertional capabilities.

## IV

### THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY

**A.   Applicable Law**.

Subjective pain testimony is an important factor in the disability determination process. Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); Varney v. Secretary of Health and Human Services, 846 F.2d 581, 583 (9th Cir. 1987). Subjective complaints of pain must be associated with medical impairments that "could

9

reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

In those cases where a claimant contends that he or she experiences pain which, while associated with a medical impairment, is greater than the impairment would normally be expected to produce, this is referred to as "excess pain testimony" - defined as "pain that is unsupported by objective medical findings." Cotton, 799 F.2d at 1407. In order for the ALJ to have properly decided to disbelieve or disregard such excess pain testimony, his decision must be supported by specific findings. See, Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986); Cotton, 799 F.2d at 1407.

The existence of some pain does not constitute a disability, if the claimant is not thereby prevented from working. See, Thorn v. Schweiker, 694 F.2d 170, 171 (8th Cir. 1982). In addition, weak objective support for claims of subjective pain can undermine such testimony or claims of disabling pain. See, Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998). An ALJ may properly rely on inconsistencies in a claimant's testimony. Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ "may not discredit a claimant's testimony of subjective pain, and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991). Thus, an ALJ may not solely rely on the inconsistency between a claimant's testimony and the objective medical evidence. The ALJ may, however, rely on other inconsistencies and reasons cited in the decision. Orteza v. Shalala, 50 F.3d 748, 749-750 (9th Cir. 1995).

For example, a claimant's inadequately explained failure to seek

medical treatment may be relevant grounds for the ALJ to reject the credibility of a claimant's pain testimony. Fair v. Bowen, 885 F.2d 597 (9th Cir. 1989); Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination.").

**B.  Analysis.**

The ALJ specifically cited to a variety of reasons that, when considered in total, support his discrediting of Plaintiff's subjective complaints of disabling pain.

First, the ALJ pointed to the fact that Plaintiff only pursued minimal treatment for her pain. (AR 74.) The Ninth Circuit has held that an ALJ is permitted to use inadequately explained absence of treatment to discredit a claimant's subjective complaints of pain. See Fair v. Bowen, 885 F.2d 597 (9th Cir. 1989); Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination."). The record demonstrates that Plaintiff only sought infrequent treatment for her pain from her primary care physician, Dr. Willis. (AR 74, 330-38, 393.) In a report dated July 10, 2007, Dr. Willis reported that Plaintiff "has not been in clinic for one year." (AR 74, 334.) Furthermore, many of Plaintiff's more recent visits to Dr. Willis were primarily for her hypertension and diabetes, both of which were under adequate control. (AR 74, 330-38, 398, 401.)

Plaintiff contends that the reason that she was unable to seek more frequent treatment for her pain was her inability to afford visits to Dr. Willis. Though, Plaintiff correctly notes that an inability to afford treatment may be a valid excuse for not following

1 treatment, she had been visiting Dr. Willis fairly regularly for her
2 hypertension and diabetes, both of which were under adequate control.
3 If Plaintiff's pain was indeed as severe as alleged, Plaintiff would
4 undoubtedly have been more diligent in raising these pain complaints
5 on her scheduled visits with Dr. Willis.  The ALJ mentioned that
6 Plaintiff alternatively had access to county services that would have
7 been available to her given the alleged severity of her symptoms.  (AR
8 74.)   Though this fact in itself is not alone enough to discredit
9 plaintiff's claim, it is outweighed by the overall strength of the
10 ALJ's other credibility conclusions.
11      Additionally, the ALJ employed the following reasoning in making
12 his credibility determination:
13           "Claimant's allegations of vertigo and pain at a
14           level of 11 on a scale from 1 to 10 are not
15           credible based upon the absence of labyrinth or
16           other diagnostic testing for vertigo and the
17           absence of emergency room records or
18           hospitalizations for treatment of vertigo and/or
19           pain symptoms."
20 (AR 75.)
21
22      The Ninth Circuit has held that the ALJ may rely on
23 inconsistencies in the claimant's testimony in making a credibility
24 determination.  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).
25 Here, the ALJ is correct in concluding that Plaintiff's allegations of
26 pain at a level of 11 on a scale from 1 to 10, do not appear credible,
27 not only due to the absence of emergency room visits or
28 hospitalizations, but more importantly, due to the aforementioned lack

of frequent visits to her primary care doctor or other available services for pain treatment. Furthermore, Plaintiff is mistaken in her assertion that the lack of medical documentation in regards to her vertigo is irrelevant to the credibility of her pain testimony. The disparity between the claimed severity of Plaintiff's vertigo and Plaintiff's lack of any formal diagnostic vertigo testing, though alone not dispositive, supports the ALJ's credibility findings.

Furthermore, in her July 10, 2007, report, Dr. Willis noted the following observations:

> "She [Plaintiff] tells me that today that she won her Workmen's Comp case. She is waiting to have money. She seems happy at this time. She has been trying to lose weight. She just came from traveling somewhere to visit relatives. She was working out while she was there in the YMCA, etc. She is ambulating with her cane, but not as often, she states. It is certainly interesting how she is doing much better since she won her case."

(AR 334.)

The ALJ observed that Plaintiff's significant difference in demeanor following the settlement of her Worker's Compensation case suggests that Plaintiff "has a tendency to exaggerate her symptoms to at least some extent." (AR 75.) Though Plaintiff contends that her "improvement" was a "reasonable" reaction to her legal victory (JS 12.), this evidence does call into question Plaintiff's credibility, and was a reasonable inference in the context of the credibility determination.

13

In addition to the aforementioned inconsistencies, the ALJ also considered the objective medical evidence in discounting the credibility of Plaintiff's pain testimony. Though an ALJ may not discredit a claimant's testimony of subjective pain solely because the degree of pain alleged by the claimant is not supported by objective medical evidence, here the objective medical evidence supports the ALJ's aforementioned credibility findings. See Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991).

The ALJ noted that "[a]lthough Ms. Avila's daughter testified that Ms. Avila is unable to sit or walk for extended periods of time, there is no objective medical evidence and/or opinions from any physicians in the record corroborating such severe allegations . . ." (AR 73.) In particular, Plaintiff testified that she was able to stand for only "maybe five or 10 minutes at the most, I have to hold on to somebody or sit down, lean against a wall." (AR 46.) This is inconsistent with two doctors' exertional reports in the record which found that Plaintiff can stand for four or six hours with normal breaks. (AR 355, 358.) Moreover, the ALJ did in fact take into account Plaintiff's pain testimony as demonstrated by the imposition of further limitations alternating one-hour intervals of sitting and standing. (AR 73-75.)

The ALJ additionally noted that though Plaintiff claims to be under such severe pain that she "stay[s] in bed most of the day," (AR 37.), "there is no evidence to establish any recent emergency room treatments and/or hospitalizations for treatment of severe knee pain." (AR 73.) Though lack of treatment alone is not enough to discredit a claimant's pain testimony, the lack of objective medical evidence verifying Plaintiff's subjective pain testimony does not weigh in

14

1 Plaintiff's favor. Due to the aforementioned reasons, the Court
2 concludes that the ALJ properly evaluated Plaintiff's credibility.

V

**THE ALJ PROPERLY CONSIDERED LAY TESTIMONY FROM THE PLAINTIFF'S DAUGHTER, MARIE TORRES**

**A. Applicable Law**

An ALJ must consider lay testimony concerning a claimant's ability to work. Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). "Lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Thus, "[i]f the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919; Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses.") (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)).

The Ninth Circuit has held that "inconsistency with medical evidence" is a germane reason for rejecting lay testimony. Bayliss, 427 F.3d at 1218. When lay witness testimony does not introduce any limitations not already described by the claimant, it is not harmful error for the ALJ to fail to discuss lay witness testimony where the ALJ has provided sufficient reasons for rejecting similar testimony. Valentine v. Comm'r Social Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

15

### B. Analysis

Plaintiff contends that the ALJ did not properly consider lay testimony from Plaintiff's daughter, Marie Torres ("Torres"). (AR 55-58, 73.) The ALJ concluded:

> "Although Ms. Avila's daughter testified that Ms. Avila is unable to sit or walk for extended periods of time, there is no objective medical evidence and/or opinions from any physicians in the record corroborating such severe allegations, and there is no evidence to establish any recent emergency room treatments and/or hospitalizations for treatment of severe knee pain. It also appears that claimant's testimony is somewhat inconsistent inasmuch as she originally testified that she tries to exercise on a regular basis , but that she has problems after exercising for a period of approximately 2 days whereas claimant's subsequent testimony and the testimony of her daughter suggest that she lays dormant in bed most of the day every day."

(AR 73.)

The ALJ found that Plaintiff's daughter's testimony was inconsistent with the objective medical evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses."). Plaintiff contends that Torres's testimony was not inconsistent with the objective medical record because the ALJ did not properly consider the 2008 and 2009 bilateral knee x-rays revealing "severe" bilateral

1  knee osteoarthritis. (AR 366, 370.) As already discussed, the ALJ did
2  not err in disregarding this evidence because the 2008 and 2009 knee
3  x-rays were neither "probative" or "significant". See Howard v.
4  Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)(quoting Black v. Apfel,
5  143 F.3d 383, 386 (8th Cir. 1998)); Howard ex rel. Wolff v. Barnhart,
6  341 F.3d 1006, 1012 (9th Cir. 2003). Thus, the ALJ's finding that
7  Torres's testimony was inconsistent with the objective medical record
8  was a germane reason to discredit her testimony.

   Moreover, Torres's testimony was largely reflective of
10 Plaintiff's own testimony. Torres testified that Plaintiff spent most
11 of her day in bed, could not perform most of the household chores
12 alone, and complained of pain. (AR 28-35, 55-57, 73.) Thus, the
13 ALJ's reasons for discounting the credibility of Plaintiff's own
14 testimony apply equally to her daughter's testimony as well. See
15 Valentine v. Comm'r Social Sec. Admin., 574 F.3d 685, 694 (9th Cir.
16 2009). Therefore, the ALJ's depreciation of Torres's lay testimony
17 was substantially justified.

   For the foregoing reasons, the Court finds no error with regard
19 to the ALJ's Decision, which will be affirmed. The Complaint will be
20 dismissed with prejudice.

   **IT IS SO ORDERED**.

DATED: July 25, 2012                    /s/
                                 VICTOR B. KENTON
                                 UNITED STATES MAGISTRATE JUDGE